IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE INSURANCE COMPANY, as subrogee of ANTHONY LORINO : : : | CIVIL ACTION |
| Plaintiff, : | |
| v. : : | NO. 11-7866 |
| SEARS, ROEBUCK AND CO., and : ELECTROLUX HOME PRODUCTS, INC. : : | |
| Defendants. : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                       April 3, 2013

Currently pending before the Court is Defendants Sears, Roebuck and Co. and Electrolux Home Products, Inc.'s Motion for Summary Judgment. For the following reasons, the Motion is granted in part and denied in part.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On or about January 24, 2004, Anthony Lorino purchased an electric range from Sears, which was subsequently installed in his home. (Compl. ¶¶ 5–6.) The stove came with a "Use and Care Guide." (Defs.' Mot. Summ. J., Ex. B., Jun. 26, 2012 Deposition of Anthony Lorino ("Lorino Dep."), 46:6–47:7.) This Guide contained a "Master Protection Agreement," which stated:

> Congratulations on making a smart purchase. Your new Kenmore appliance is designed and manufactured for years of dependable operation . . . The Master Protection Agreement also helps extend the life of your new appliance. Here's what's included in the agreement:
>
> . . . .

> "No-Lemon guarantee" — replacement of your covered product if more than 3 product failures occurred within 12 months
>
> Product replacement if your covered product can't be fixed.

(Pl.'s Opp'n Summ. J., Ex. D, Electric Use and Care Guide ("Use and Care Guide") 6.)

On December 9, 2009, a fire occurred at Mr. Lorino's home, allegedly caused by the electric range. (Id. ¶¶ 2, 7.) The fire was investigated by Bristol Township Fire Marshall Kevin J. Dippolito. In his investigation report, Marshall Dippolito found,

> Following burn and char patterns, this investigator was lead to the area behind the oven, directly behind the control head that runs the width of the stove. . . Also noted was the significant destruction of the top control panel for the stove. It was noted the face of the control panel was completely consumed by fire, with extensive damage to the interior electronics. While examining the stove, I noted unusual marking along the left side of the back metal panel, which would be directly behind the stove control face.

(Pl.'s Opp'n Summ. J., Ex. F., Investigation Report of Fire Marshall Kevin J. Dippolito ("Fire Marshall Report"), 2.) The range never had any problems between its purchase and installation in 2004 until the fire in 2009. (Lorino Dep. 48:3–7.)

Plaintiff retained Randy Marshall, P.E. to serve as an expert in this case. In the first of two expert reports he prepared for this case, Mr. Marshall stated that the cause of the fire was the range's control panel. (Defs.' Mot. Summ. J., Ex. C, Sept. 17, 2012 Engineering Report of Randy Marshall ("Marshall Report"), 7.) Specifically, Mr. Marshall noted, "The arcing noted and the origin of the fire show that a malfunction occurred in the control panel of the stove. This malfunction caused the fire." (Id.)

On December 1, 2011, Nationwide brought action against Defendants in the Bucks County Court of Common Pleas. Defendants removed the case to this Court on December 28,

2

2011. Subsequently, Defendants filed the instant Motion for Summary Judgment on January 31, 2013. Plaintiff filed a Response in Opposition on February 25, 2013. The Court will now consider the merits of this Motion.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

## III. DISCUSSION

### A. Negligence

In Pennsylvania, a plaintiff who brings a negligence claim must establish that the defendant owed the plaintiff a duty, that the duty was breached, that the breach caused the plaintiff's injury, and that the plaintiff suffered damages. Harris v. Merchant, No. Civ.A.09-1662, 2010 WL 3734107, at *7 (E.D. Pa. Sept. 23, 2010) (citing Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502 (Pa. 2009)). In a product defect case, a plaintiff must

4

establish the second and third elements of this test by showing her injury was proximately caused by "a specific defect in the manufacture or design of a product." Brandon v. Ryder Truck Rental, Inc., 34 A.3d 104, 110 (Pa. Super. Ct. 2011); see also MacDougall v. Ford Motor Co., 257 A.2d 676, 678 (Pa. Super. Ct. 1969), overruled in part on other grounds by REM Coal Co., Inc. v. Clark Equip. Co., 563 A.2d 128 (Pa. Super. 1989). "[L]iability hinges upon whether the accident could have been avoided by the exercise of reasonable care." Brandon, 34 A.3d at 110; see also MacDougall, 257 A.2d at 680.

Defendants here contend that Plaintiff has failed to provide evidence that the fire was proximately caused by a specific defect in the manufacture or design of the electric range. Specifically, Defendants note that the expert report provided for Plaintiff by Mr. Marshall is silent as to the exact cause of the fire, and it does not explain why the stove worked for nearly six years without incident after leaving Defendants' control. In reply, Plaintiff relies on Cavanagh v. Electrolux Home Prods., No Civ.A.10-2890, 2012 WL 4963682 (E.D. Pa. Oct. 18, 2012), another case against Electrolux in which the defendants raised the same arguments presented in this case. In that case, like here, Electrolux argued that "[the expert] fails to identify a specific manufacturing or design defect in that thermostat. Rather, according to Electrolux, [Plaintiff's expert] only suggests possible defects in any defrost thermostat." Cavanagh, 2012 WL 496382 at *3. In Cavanagh, the court found that Plaintiff did not need to prove with absolute certainty the specific cause of the injury. Id. The expert in Cavanagh stated that, to a high degree of scientific certainty, the product in that case (a dehumidifier) was defectively manufactured and caused the resulting fire, either from a slight misalignment of the switch contacts or insufficient contact pressure on the switches. Id.

5

The facts in this case are substantially no different than Cavanagh and, thus, we accept that court's reasoning and conclusion. Here, Plaintiff's expert contends, "It is my opinion, to a reasonable degree of scientific certainty, that the fire . . . was caused by a malfunction in the control panel of the Electrolux manufactured, Sears branded stove." (Marshall Report at 7.) Mr. Marshall further noted that the specific malfunction in the control panel could have been caused by arcing in the wires, overheating of the circuit board, or some other heat source that was hidden by significant damage to the stove. (Id.) The fact that Plaintiff has not identified what specifically *within* the control panel caused the damage is of no import and is no different than the expert in Cavanagh's finding that one of two potential defects caused the fire. Accordingly, Defendant's Motion for Summary Judgment on the negligence claim is denied.

### B. Strict Liability

To prevail on a strict liability claim, a plaintiff must show (1) a product was defective; (2) the defect caused the plaintiff's injury; and (3) the defect existed at the time the product left the manufacturer's control. See Barnish v. KWI Bldg. Co., 980 A.2d 535, 541 (Pa. 2009). If a plaintiff cannot provide direct evidence of the defect, he may proceed under the "malfunction theory" by providing circumstantial evidence of the occurrence of a malfunction and evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. Id. at 542. Moreover, "to survive summary judgment, a plaintiff who admits that the product functioned properly in the past must present some evidence explaining how the product could be defective when it left the manufacturer's control and yet still function properly for a period of time." Id. at 547.

Defendants contend that Plaintiff has not met the third element by providing evidence that

the electric range was defective at the time it left the manufacturer's control. Additionally, Defendants claim that Plaintiff has not offered evidence as to why the range operated without incident for nearly six years before causing the fire. Plaintiff again turns to Cavanagh, in which the court found that Plaintiff's export report appropriately described how the dehumidifier's thermostat could have deteriorated over a period of years and, thus, worked for a period of time without incident before causing the fire. Plaintiff contends that its own expert, Mr. Marshall, addressed this issue in his deposition testimony, wherein he stated, "Most every PVC insulation begins to break down slowly. . . . Once the insulation finally breaks down and arcs to a grounded or opposite polarity conductor, then you're going to have electrical activity that is very, very hot and can ignite any materials that may be around." (Pl.'s Opp'n. Summ. J., Ex. H., Dec, 3, 2012 Deposition of Randolph Marshall ("Marshall Dep."), 108:23–109:17.)

Again, we are inclined to accept the reasoning in Cavanagh and find that this case does not differ in any meaningful way. Plaintiff has provided evidence suggesting how the range could have a manufacturing defect but still have worked without incident for six years—particularly since Mr. Lorino testified it was used sparingly. This testimony creates at least a material issue of fact that must be presented before a jury. As such, Defendants' Motion is denied as to the strict liability claim.

 **C.**   **Breach of Warranty**

  **1.**   **Breach of Express Warranty**

A seller creates an express warranty under Pennsylvania law by:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to

>the affirmation or promise.
>
>(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
>(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa. Const. Stat. § 2313(a). Both Plaintiff and Defendants acknowledge that the range came with an explicit warranty that covered all parts for one year from the date of purchase. Plaintiff argues, however, that there was an explicit extension of the warranty to future performance of the goods, such that it did not begin tolling until the breach occurred—namely, the date of the fire. In support, Plaintiff points to the "Master Protection Agreement" language included within the electric range's documentation. Specifically, Plaintiff notes that the Agreement stated the electric range was "designed and manufactured for *years of dependable operation*." (Use and Care Guide 6 (emphasis added).) Additionally, Plaintiff notes that the Master Protection Agreement promised "Product replacement if your covered product cannot be fixed." (Id.) This language, Plaintiff argues, explicitly extended the one-year express warranty.

      Plaintiff's argument is unconvincing. First, the Master Protection Agreement specifically states that the "No-Lemon guarantee" extends for only 12 months after the purchase of the stove. This language suggests that the manufacturer had no intention of extending the warranty beyond one-year. Secondly, even if Defendants intended to extend the warranty, they did not do so explicitly. "[N]early all warranties contain 'promises regarding the manner in which the goods will perform after tender of delivery'. . . Allowing a warranty to extend to future performance merely because it contains such promises 'would allow the exception to swallow the rule.'"

8

Horsmon v. Zimmer Holdings, Inc., No. Civ.A.11-1050, 2012 WL 423434, at *4 (W.D. Pa. Feb. 8, 2012) (citing Patton v. Mack Trucks, Inc., 519 A.2d 959, 964 (Pa. Super. Ct. 1986)). As there was no unambiguous extension of the warranty in the Master Protection Agreement, Plaintiff has not shown that there was a breach of an express warranty.

### 2. Breach of Implied Warranty of Merchantability and Fitness for Particular Purpose

Pennsylvania law holds that "[u]nless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa. Cons. Stat. § 2314(a). Goods are "merchantable" only when they, inter alia, "pass without objection in the trade under the contract description," "are fit for the ordinary purposes for which such goods are used," and "are adequately contained, packaged, and labeled as the agreement may require." Id. § 2314(b); see also Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc., 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009). Similarly, an implied warranty of fitness for a particular purpose exists "[w]here the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods[.]" 13 Pa. Cons. Stat. § 2315.

The statute of limitations for a breach of warranty is four years. 13 Pa. Cons. Stat. § 2725(a). It begins to run when tender of delivery of the allegedly defective product occurs, "regardless of the aggrieved party's lack of knowledge of the breach." Id. § 2725(b); see also McCracken v. Daimler Chrysler Motors Co. LLC, No. Civ.A.07-2202, 2008 WL 920344, at *4 (E.D. Pa. Apr. 3, 2008) ("[A] breach of warranty action accrues on, and suit must be filed within

9

four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered.") (quoting Nationwide Ins. Co. v. Gen. Motors Corp., 625 A.2d 1172 (Pa. 1992)). Only where the warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance does the cause of action accrue when the breach is or should have been discovered. 13 Pa. Cons. Stat. § 2725(b). Notably, when a defendant asserts a statute of limitations defense on a motion for summary judgment, the defendant bears the burden of proving that defense. Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002).

Both Plaintiff and Defendants acknowledge that the range came with an explicit warranty that covered all parts for one year from the date of purchase. Defendants contend that the statute of limitations began to accrue on the date of purchase, January 24, 2004, and expired four years later, January 24, 2008—twenty-three months before the fire. Because, as stated above, we find that there was no express extension of the warranty beyond one year, the four year statute of limitations accrued upon delivery and had expired by the date of the fire. Consequently, Defendants' Motion is granted as to the breach of warranty claim.[1]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in part and denied in part. Because Plaintiff has provided evidence both that the fire was caused by the control panel in the electric range and that there is a plausible reason to think the defect existed at the time it left Defendants' control, Defendants Motion is denied as to the negligence

---

[1] The court finds Plaintiff's argument that equitable estoppel applies unconvincing. There is no evidence of fraud or other improper action on the part of Defendants in this case which would warrant tolling of the statute.

and strict liability claims.  Defendants' Motion is granted as to the breach of warranty claim, as there is no indication that the express one-year warranty was explicitly extended, and the statute of limitations covering any implied warranty has expired.

      An appropriate Order follows.